**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAMONT DANIELS,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | **No. 16-4270** |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                                 **January 3, 2017**

      Lamont Daniels was arrested two years ago while dropping off clothing for his girlfriend's daughter. Daniels alleges, among other things, that his arrest lacked probable cause and was marked by excessive force. He also alleges that the City of Philadelphia maintains a policy, practice, or custom that caused the constitutional violations against him. The City of Philadelphia moves to dismiss the claims against it, and Officers Michael Berkery and Ryan Pownall move to dismiss the excessive force claim against them. The Court agrees that Daniels has failed to state a claim against the City of Philadelphia, and therefore will dismiss that claim. The excessive force claim against the individual police officers, however, may proceed.

**I.      BACKGROUND**

      Daniels owns and operates a security company that provides armed security services for clients. (Compl. ¶ 11.) He is authorized to carry a firearm. (*Id*.)

      Daniels was working on the evening of August 8, 2014. (*Id*. ¶ 12.) Around 6pm that day, Daniels had finished work at one of his clients and was driving to another client located in Philadelphia. (*Id*.) On his way, he stopped by the home of his girlfriend's daughter to drop off some

clothes for his girlfriend's daughter. (*Id*. ¶ 13.) Daniels parked outside the home, and waited in his SUV for her to come outside and get the clothes. (*Id*. ¶¶ 14–15.) While waiting in his SUV, Daniels saw a police car drive by and stop in front of him. (*Id*. ¶ 15.) The police car radioed that the registration on Daniels's car had expired. (*Id*. ¶ 16.) A second police car arrived on the scene and parked behind Daniels's car. (*Id*. ¶ 17.) Police Officers Berkery and Pownall exited the second police car and walked toward Daniels's car. (*Id*. ¶ 18.) Officer Berkery stood outside Daniels's open driver's side window and Officer Pownall stood outside Daniels's open passenger side window. (*Id*. ¶ 20.) Daniels, who was wearing his security uniform with his firearm on his right side in its holster, asked the officers if there was a problem. (*Id*. ¶¶ 19, 22.) Officer Berkery replied that there was an alleged 911 call about somebody in the area with a gun, and he asked Daniels if Daniels would consent to a search of his car. (*Id*. ¶¶ 21, 23.) Daniels provided the officers with his work identification, his certificate allowing him to carry a firearm, and his fugitive recovery identification. (*Id*. ¶ 24.)

As Daniels complied with Officer Berkery's directive to step out of his car, Daniels "was immediately forcibly subjected to an unlawful frisk and search." (*Id*. ¶ 25.) Officer Berkery removed Daniels's firearm from its holster and forcibly wrestled with Daniels's duty belt. (*Id*. ¶ 27.) Officers Berkery and Pownall then pushed Daniels into the back of a police car. (*Id*. ¶ 28.) Officer Berkery directed unnamed officers in the first police car to arrest Daniels, but those officers told Officer Berkery to issue a ticket for the registration and to let Daniels leave. (*Id*. ¶ 29.) Officer Berkery then removed Daniels from the police car Daniels was in and pushed Daniels into his police car. (*Id*. ¶ 30.) Daniels sat in Officer Berkery's police car for an hour while his car was illegally searched without consent. (*Id*. ¶¶ 26, 33.)

2

Officers Berkery and Pownall arrested Daniels and charged him with carrying a firearm without a license, possession of marijuana, carrying a firearm in public in Philadelphia, and driving an unregistered vehicle. (*Id*. ¶ 34.) The unregistered vehicle charge was disposed of in the Magisterial District Court. (*Id*. ¶ 37.) On September 18, 2015, Daniels was found not guilty of the remaining charges against him. (*Id*.)

Plaintiff has not only sued individual police officers, but he has also brought a claim against the City of Philadelphia. Plaintiff claims that the Philadelphia Police Department ("PPD") "has a well documented history of excessive force, unlawful searches and seizures, and unlawful arrests without probable cause or reasonable suspicion which has led to several civil rights lawsuits against The City for PPD's wrongful conduct often by unreasonable force and against persons of African American and/or Latino race or ethnicity." (*Id*. ¶ 38.) Plaintiff claims that former Police Commissioner Charles Ramsey was responsible for making and enforcing personnel decisions and policies that ensured effective policing. (*Id*. ¶¶ 42–44.) Plaintiffs allege that the actions of Defendant police officers were the result of policies, practices, and customs of the City of Philadelphia, as well as the failure to train, supervise, and discipline police officers on constitutional standards. (*Id*. ¶ 45.)

Daniels brings claims for excessive force against Defendant police officers and the City of Philadelphia, unreasonable search and seizure against Defendant police officers and the City of Philadelphia, unlawful arrest against Defendant police officers and the City of Philadelphia, and bystander liability and malicious prosecution against Defendant police officers.

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as

true all well-pleaded allegations and draw all reasonable inferences in favor of the nonmoving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Anspach* ex rel. *Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id*. (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231. In deciding a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

The Third Circuit has established a two-part analysis for a motion to dismiss for failure to state a claim. First, the legal conclusions and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a common sense

determination of whether the facts alleged in the complaint are sufficient to show a plausible claim

for relief. *Id*. at 211. If the court can only infer the possibility of misconduct, the complaint must be

dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. *Id*.


III.     **DISCUSSION**

A.     **Excessive Force Claim Against Police Officers**

Plaintiff has asserted two different theories in an effort to sustain his excessive force claim.

First, he contends that because the arrest was made without probable cause, any force must be

deemed excessive. (Pl.'s Br. in Opp'n to Defs.' Partial Mot. to Dismiss at 13 ("[W]ithout probable

cause, *any* use of force was, by definition, not incident to a lawful arrest and excessive.").) Second,

he also contends that even if probable cause existed for the arrest, the force used was excessive. (Am.

Compl. ¶ 58.) Defendants argue that Plaintiff's first theory is wrong as a matter of law, and that any

force used does not rise to the level of excessive. The Court rejects Daniels's first theory, but holds

that he may proceed to discovery on his second theory.

When an "excessive force claim arises in the context of an arrest or investigatory stop of a

free citizen, it is most properly characterized as one invoking the protections of the Fourth

Amendment, which guarantees citizens the right to be secure in their persons . . . against

unreasonable . . . seizures. " *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state an excessive

force claim, a plaintiff must show that a seizure occurred and that it was unreasonable. *Estate of

Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005). Because Daniels's arrest constituted a seizure,

the Court must decide whether the force used during the arrest was excessive, and thus unreasonable.

*See Boyden v. Twp. of Upper Darby*, Civ. A. No. 13–5434, 2014 WL 1152149, at *5 (E.D. Pa. Mar.

24, 2014). Factors relevant to this analysis include the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Other relevant factors include the possibility that the suspect is violent or dangerous, the possibility that the suspect may be armed, the duration of the police officers' action, whether the action takes place in the context of effecting an arrest, whether the suspect is physically injured, and the number of persons with whom the police officers must contend at one time. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). An arrest made without probable cause is insufficient, standing alone, to make out an excessive force claim. *See Holmes v. City of Wilmington*, 79 F. Supp. 3d 497, 506 (D. Del. 2015) ("Since excessive force and false arrest inquiries are distinct, demonstrating a lack of probable cause to effect an arrest does not demonstrate an excessive force claim, and vice-versa."). Moreover, a *de minimis* amount of force during an arrest will not lead to liability for excessive force. *See, e.g.*, *Nardini v. Hackett*, Civ. A. No. 00–5038, 2001 WL 1175130, at *6 (E.D. Pa. Sept. 19, 2001) (recognizing that "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment").

Turning to Daniels's theories in favor of his excessive force claim, the mere fact that he was arrested without probable cause does not turn his arrest into an excessive force case. If it did, every unlawful arrest claim would bring with it a tagalong excessive force claim. That is not the law. *Snell v. City of York, Pennsylvania*, 564 F.3d 659, 672 (3d Cir. 2009) ("We have rejected similar efforts to bootstrap excessive force claims and probable cause challenges."). However, the factual allegations in the Amended Complaint state a plausible claim that Defendant police officers used excessive force against Daniels. He alleged that there were multiple officers on the scene, and that

6

despite posing no threat to the officers, he was pushed on multiple occasions despite complying with all directives. There were multiple officers on the scene to arrest one individual. Additionally, officers used force against Daniels after relieving him of his weapon. Moreover, other officers on the scene were prepared to allow Daniels to leave with just a citation, suggesting that Daniels was not perceived as a threat to the officers. Viewing the allegations as a whole and accepting them as true, Daniels has stated an excessive force claim. Although ultimately the force employed against Daniels may be deemed *de minimis*, the factual allegations in the Amended Complaint entitle Daniels to discovery on his excessive force claim.

**B.     *Monell* Claims Against the City of Philadelphia**

According to Defendants, Daniels has failed to plead facts that support a claim against the City of Philadelphia. Defendants also argue that Daniels has failed to allege actionable conduct by a municipal decision maker. The Court agrees and will therefore dismiss the claims against the City of Philadelphia.

A municipality may be sued directly under 42 U.S.C. § 1983 only if the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, (1978). A "custom or usage" may also qualify, even if not formally approved by the official decision making body. *Id*. at 691. In addition, municipal liability may be based on the actions of a single official policymaker if that person holds "final authority" to establish such policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). Municipalities however, may not be held liable under a respondeat superior theory. *Monell*, 436 U.S. at 691.

The Amended Complaint lacks facts sufficient to sustain a *Monell* claim. Daniels claims that

the City of Philadelphia has been sued for civil rights violations, but that these lawsuits have failed to remedy the unlawful practices of the Philadelphia Police Department. Specifically, Daniels "alleges in his Amended Complaint that the Philadelphia Police Department has a well documented history of use of excessive force, unlawful searches and seizures, and unlawful arrests without probable cause which has led to several civil rights lawsuits." (Pl.'s Br. in Opp'n to the Partial Mot. to Dismiss at 10.) He further claims that despite multiple lawsuits against the City of Philadelphia, such unlawful acts persist. (*Id*.) Daniels also notes that he has alleged "that the chain of command of the Philadelphia Police Department is comprised of eleven different ranks beginning at the entry level position of police officer and ending with the Police Commissioner." (*Id*.)

This argument is not persuasive. The fact that the City of Philadelphia has been sued previously for alleged civil rights violations does not address whether there exists a policy, practice, or custom that led to the violation of Daniels's civil rights. Plaintiff provides no background or information about these cases that would permit this Court to infer that there is a policy, practice, or custom at play here. Instead, the Amended Complaint relies on the mere fact that Daniels's civil rights were violated on August 8, 2014, to support his claim that the City of Philadelphia is liable under *Monell*. Allowing these claims to proceed would turn every civil rights lawsuit into a *Monell* case, essentially using a respondeat superior theory to hold a municipality liable as the employer of an officer accused of a civil rights violation.

Daniels does not help his argument by citing to the City of Philadelphia's organizational make-up. That the Police Commissioner sets policies for the department fails to demonstrate that any particular policy, practice, or custom was behind any constitutional violation here. Of course  the City of Philadelphia has a policymaker. The factual allegations in the Amended Complaint, however,

8

fail to point to any conduct by a policymaker. Daniels has merely alleged that the Police Commissioner has the power make policy for the police department. That alone does not state a *Monell* claim.

Daniels has presented the Court with a clear case of parroting the directives of *Monell* without introducing any factual allegations of a policy, practice, or custom that led to the violation of Daniels's civil rights. The *Monell* claims against the City of Philadelphia are therefore dismissed in their entirety. Although Daniels seeks leave to amend his Amended Complaint, this would be his third attempt to state a *Monell* claim. The Court is not certain what factual allegations Daniels is holding back; therefore, amending the Amended Complaint would be futile. *See Morales v. City of Phila.*, Civ. A. No. 15-1318, 2016 WL 97923, at *4 (E.D. Pa. Jan. 7, 2016) (refusing to grant leave to amend a *Monell* claim a second time due to futility.)

## III.    CONCLUSION

The discovery process will help sort out whether Defendant police officers used excessive force when they arrested Daniels. Therefore, the motion to dismiss the excessive force claim is denied. The factual allegations clearly fail to state a *Monell* claim, however, and Defendants' motion to dismiss the *Monell* claim is granted. An Order consistent with this Memorandum will be docketed separately.